UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTONY MONTERO,

                    Plaintiff,

        -against-

CITY OF NEW YORK; LISA JONES, HR
Director, individually and in official capacity;
SHANEKA MCKELLAR, EEO Officer,
individually and in official capacity, R.
CAMPION, Commissioner, individually and
in official capacity, CLAIRE CAMMARATA,
Director, individually and in official capacity,
and WALTRA MONTGOMERY, Director
Supervisor, individually and in official
capacity,

                    Defendants.

Case No. 1:25-cv-02482 (JLR)

**<u>OPINION AND ORDER</u>**

JENNIFER L. ROCHON, United States District Judge:

      Plaintiff Antony Montero ("Plaintiff" or "Montero"), proceeding *pro se*, brings this

action against Defendants City of New York (the "City"), Office of the Mayor – Office of Labor

Relations ("OLR"), Lisa Jones ("Jones"), Shaneka McKellar ("McKellar"), R. Campion

("Campion"), Claire Cammarata ("Cammarata"), and Waltra Montgomery ("Montgomery"),

(collectively, the "Defendants"), alleging that their actions during and after his employment with

the City violated various federal and state laws.  Defendants move to dismiss all claims pursuant

to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  For the following reasons, the Court

GRANTS the motion in part.  The Court dismisses most of the claims and declines to exercise

supplemental jurisdiction over the remaining state and city law claims.

**BACKGROUND**

## I.    Factual Background

On March 25, 2025, Montero filed his Complaint in this action.  Dkt. 1.  He subsequently filed an Amended Complaint on April 15, 2025, where he included some additional claims, Dkt. 8, and then finally a "Final Amended Complaint" on April 17, 2025, Dkt. 11 ("FAC").  The following facts are drawn from the FAC and taken as true for the purpose of resolving this motion.  *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 374 (2d Cir. 2024).

This action stems from Montero's time working for the OLR, a subdivision of the City. On July 29, 2024, the OLR hired Montero to provide mental health services at Lincoln Hospital. FAC ¶¶ 11-12.  Jones, McKellar, Campion, Cammarata, and Montgomery (collectively, the "Individual Defendants"), all worked in various capacities either at the OLR or with another agency in the City.  *Id.* ¶¶ 6-10.  Montgomery was Montero's direct supervisor, *id.* ¶ 10, Cammarata was a Program Director at the OLR, *id.* ¶ 9, Jones was the OLR's HR Director, *id.* ¶ 6, Campion was a commissioner with oversight of the OLR, *id.* ¶ 8, and McKellar was an Equal Opportunity Office ("EEO") Officer, *id.* ¶ 7.

Plaintiff's allegations are sparse.  Among other things, Plaintiff claims that he "and his colleagues were required to deliver mental health services without a valid permit."  *Id.* ¶ 12. Montero reported this unlicensed counseling on December 13, 2024, but was told "not to tattle tale."  *Id.* ¶ 13.  Separately, on January 3, 2025, Montero reported a client for sending "pornographic images" to Montero's "work-issued phone."  *Id.* ¶ 14.  This too was ignored by Defendants, who "refused to investigate or confiscate the phone."  *Id.*

Montero also ran into roadblocks when he told his employer that his spouse was ill and when he requested an accommodation for his own alleged disability.  When Montero "disclosed his wife's serious illness, [Montgomery] responded, 'put it in prayer,' and failed to inform him of

2

his rights under the FMLA or NYPFL." *Id.* ¶ 17.  On January 29, 2025, Montero requested "remote work as a disability accommodation" for himself, submitting medical documentation in support of his request.  *Id.* ¶ 15.  In response, according to the FAC, "Defendants removed [Montero] from the schedule, shared his medical records with unauthorized staff, and refused to implement his accommodation properly."  *Id.* ¶ 16.  The FAC attributes these actions, at least in part, to Cammarata, *id.* ¶ 9, and Montgomery, *id.* ¶ 10.  When Montero complained about this discrimination, McKellar failed to investigate these issues despite her role as an EEO Officer. *Id.* ¶ 7.  On February 4, 2025, Montero submitted a complaint to the New York State Division of Human Rights ("NYSDHR"), alleging violations of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act ("ADA").  Dkt 29-1 at 2.[1]

Then, on February 25, 2025, Montero was removed from his position by Jones without providing notification of any cause to terminate his employment.  *See id.* ¶ 18; *id.* ¶ 6.  Shortly thereafter, "[Montero] received notification from the NYS Department of Labor [("NYS DOL")] that [the] OLR reported his [firing] as 'termination for misconduct.'"  *Id.* ¶ 19.  This designation, Montero alleges, "resulted in the denial and delay of [unemployment insurance] benefits" as well as harm to his reputation and ability to acquire future employment.  *Id.* ¶ 20.

## II.    Procedural Background

On March 25, 2025, Montero initiated this action against the City, OLR, Jones, McKellar, Campion, Cammarata, and Montgomery.  *See* Dkt. 1.  Montero amended his complaint twice, first on April 15, 2025, Dkt. 8, and then on April 17, 2025, *see* FAC.  The FAC

---

[1] The Court takes judicial notice of the NYSDHR complaint attached by Defendants.  *See, e.g.*, *Rosich v. La Salle Acad.*, No. 24-cv-09183 (JLR), 2025 WL 2410596, at *1 n.2 (S.D.N.Y. Aug. 20, 2025) (taking "judicial notice of the documents filed with the New York State Division of Human Rights"); *Ramirez v. NYP Holdings, Inc.*, No. 18-cv-12058 (KPF), 2020 WL 470011, at *1 n.2 (S.D.N.Y. Jan. 29, 2020) (same).

3

asserts the following claims: (1) disability discrimination and retaliation under the Americans with Disabilities Act ("ADA"); (2) wage theft under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") §§ 191 and 193; (3) 14th Amendment due process violations; (4) Family Medical Leave Act ("FMLA") interference and retaliation; (5) common law defamation; (6) Employee Retirement Income Security Act ("ERISA") violations; (7) denial of reasonable accommodation and retaliation under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL"); (8) Title VII and NYCHRL hostile work environment claims; (9) Health Insurance Portability and Accountability Act ("HIPAA") and ADA privacy violations; and (10) NYLL § 593(3) violations.  FAC at 3-4.

On April 28, 2025, the Court dismissed the OLR from this suit as a non-suable entity. Dkt. 13 at 2.  Defendants then moved to dismiss the FAC on August 4, 2025.  Dkt. 27; Dkt. 28 ("Br."); Dkt. 29 ("Vapnyar Decl.").  Montero opposed the motion on August 8, 2025,[2] Dkt. 34 ("Opp."), and Defendants replied on September 8, 2025, Dkt. 44 ("Reply").  On September 9, 2025, Montero moved to file, then subsequently filed, a surreply. Dkt. 49; Dkt. 51 ("Surreply"). He also moved to supplement the record pursuant to Rule 15(d) and asked the Court to take judicial notice under Federal Rule of Evidence ("FRE") 201(b) of various legal conclusions, Dkt. 50.  Defendants did not oppose these motions.

A surreply is not expressly permitted by Local Rule 6.1(b) or by this Court's Individual Rules but the Court will permit it given Plaintiff's *pro se* status.  *See Gibson v. Trs. of Columbia Univ. in City of New York*, No. 25-cv-03156 (JLR), 2026 WL 114861, at *1 n.1 (S.D.N.Y. Jan. 15, 2026); *see, e.g.*, *Parkes v. Latch, Inc.*, 810 F. Supp. 3d 405, 412 n.1 (S.D.N.Y. 2025)

---

[2] Defendant initially provided two opposition briefs on August 7, 2025, Dkts. 32, 33, but later filed an amended opposition brief on August 8, 2025, Dkt. 34, which the court will accept.

(accepting surreply when plaintiff was *pro se* and defendant did not object, and collecting cases doing the same). Montero's request to supplement the pleadings under Rule 15(d) and for judicial notice are improper. Rule 15(d) only allows a party "to serve a supplemental pleading" regarding a "transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Montero seeks to add facts occurring before he filed his Complaint on March 25, 2025. Dkt. 50 at 1-2. Likewise, he asks the Court to take judicial notice of his legal conclusions, which the Court will not do. However, given Montero's *pro se* status and the Defendants' lack of objection, the Court will consider Plaintiff's surreply and motion to supplement to the extent that they expand upon his currently pleaded allegations. *Cf. Walker v. City of New York*, 367 F. Supp. 3d 39, 50 (S.D.N.Y. 2019) (considering *pro se* plaintiff's factual allegations in "later submissions as supplemental to his Complaint"); *Williams v. Ramos*, No. 13-cv-00826 (VB), 2013 WL 7017674, at *2 (S.D.N.Y. Dec. 23, 2013) ("Although the Court is typically confined to the allegations contained within the four corners of the complaint, when analyzing the sufficiency of a *pro se* pleading, a court may consider factual allegations contained in a pro se litigant's opposition papers and other court filings." (italicization added) (citation omitted)). For similar reasons, the Court will consider any factual allegations in Montero's opposition brief insofar as they supplement the pleadings. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion."); *see also Pianoforte v. Little Red Sch. House*, No. 21-cv-05003 (ER), 2022 WL 2713659, at *1 n.2 (S.D.N.Y. July 13, 2022) ("[A] court may also consider allegations in a *pro se* litigant's brief in opposition to a motion to dismiss that are consistent with the allegations in the complaint.").

**LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a pleading must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court accepts as true all non-conclusory allegations of fact and draws all reasonable inferences in the nonmovant's favor. *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) (en banc). But a court need not "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A pleading must allege "more than a sheer possibility that a [party] has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "[T]he court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). Determining whether a pleading states a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Where a plaintiff proceeds *pro se*, as in this case, the Court construes the pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interprets them "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (citation omitted). However, "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party 'from compliance with relevant rules of procedural and substantive law.'" *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (italicization added) (quoting *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009)). Such pleadings "cannot withstand a motion to dismiss unless [they] contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Martinez v. Ravikumar*, 536 F. Supp. 2d 369, 370 (S.D.N.Y. 2008) (citation omitted).

**DISCUSSION**

Defendants argue that the FAC should be dismissed under Rule 8(a)(2) because Montero engages in improper group pleading.  Br. at 5-6.  Defendants further contend that the Court should dismiss each claim under Rule 12(b)(6) for failure to state a claim.  Br. at 6-21.  The Court addresses each argument in turn.

## I.    Rule 8(a)

Defendants first argue that the FAC fails under Rule 8 because it "do[es] not specify when the alleged events occurred," and "makes little effort to differentiate which Defendant is allegedly involved in which of the causes of action."  Br. at 6.  Rule 8 requires a pleading to have "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The "principal function" of this rule is "to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial."  *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).  Dismissal pursuant to Rule 8(a) "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."  *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (quoting *Salahuddin*, 861 F.2d at 42).  Furthermore, "dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."  *Boykin v. KeyCorp.*, 521 F.3d 202, 216 (2d Cir. 2008); *accord Mays v. Falu*, No. 18-cv-06145 (KMK), 2019 WL 6619330, at *3 (S.D.N.Y. Dec. 5, 2019).

This pleading is quite sparse and vague, and it is certainly difficult to discern which Defendant engaged in most of the conduct alleged.  However, Defendants adequately responded to each claim and the Court cannot say that the claims are "so confused, ambiguous, vague, or otherwise unintelligible that [their] true substance, if any, is well disguised."  *Simmons*, 49 F.3d

7

at 86.  Therefore, the Court will not dismiss the FAC on procedural grounds under Rule 8(a) and will instead address the merits of each claim.

## II.    Count III - Wage Theft

Montero pleads in Count III that Defendants engaged in wage theft under the FLSA and the NYLL §§ 191 and 193 because they "withheld wages pending phone return despite evidence of return and no documented misconduct."  FAC at 3.  Defendants move to dismiss this claim because (1) NYLL §§ 191 and 193 do not apply to government employers, Br. at 7; and (2) Montero fails to plead sufficient facts to state an FLSA claim, *id.* at 8.  Montero does not address either argument in his opposition.  The Court agrees with Defendants.

### A.    NYLL §§ 191 and 193

Montero cannot sustain a claim under NYLL §§ 191 and 193, because neither provision applies to government agencies.  Section 191 outlines the frequency with which employers must pay employees, NYLL § 191, and section 193 prohibits employers from making "deduction[s] from the wages of an employee" except in limited circumstances, NYLL § 193.  These provisions, however, do not apply to government agencies, including the City of New York. NYLL § 190(3) ("The term 'employer' shall not include a government agency."); *see, e.g.*, *Eng v. City of New York*, No. 15-cv-01282 (DAB), 2017 WL 1287569, at *3 (S.D.N.Y. Mar. 29, 2017) (dismissing NYLL claims because the statute "does not apply to governmental agencies, including the City of New York"), *aff'd*, 715 F. App'x 49 (2d Cir. 2017) (summary order); *Hodgson v. City of New York*, No. 12-cv-01634 (HB), 2013 WL 840874, at *6 (S.D.N.Y. Mar. 7, 2013) (same).

Accordingly, Montero cannot sustain a claim under either sections 191 or 193 of the NYLL.

### B.    FLSA

Montero also does not plausibly allege a wage theft claim under the FLSA.  "The FLSA requires that an employer 'pay to each of his employees . . . who in any workweek is engaged in commerce or in the production of goods for commerce . . . not less than the minimum wage." *Ramirez v. Tifaret Disc., Inc.*, No. 22-cv-10489 (KMK), 2023 WL 6318616, at *6 (S.D.N.Y. Sept. 28, 2023) (quoting 29 U.S.C. § 206(b)).  Montero's only allegation for wage theft in his Complaint and subsequent filings is that "Defendants withheld wages pending phone return despite evidence of return and no documented misconduct."  FAC at 3; *see generally* Opp.; Surreply; Dkt. 50.  He does not allege that he was paid below the minimum wage.

Even if the Court were to construe Montero's wage theft claim as challenging late wages, *see, e.g.*, *Rogers v. City of Troy*, 148 F.3d 52, 57 (2d Cir. 1998) ("[I]t is clear that the FLSA requires wages to be paid in a timely fashion"); *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 491 (2d Cir. 1960) ("While the FLSA does not expressly set forth a requirement of prompt payment, such a requirement is clearly established by the authorities[.]"); *Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 352 (S.D.N.Y. 2014) ("While the statutory language of the FLSA does not prescribe any particular payment schedule, courts have consistently interpreted Section 206(a) of the statute to include a prompt payment requirement."), he still fails to state a claim.   Plaintiff's vague (and, frankly, inscrutable) allegation that Defendants "withheld payments pending phone return despite evidence of return" does not plausibly plead that Plaintiff was denied prompt wages in violation of the FLSA as opposed to wages being delayed for a legitimate business reason.  *See Ramirez*, 2023 WL 6318616, at *6 ("An employer's change to its pay schedule does not violate the prompt payment requirement where 'the change: (a) is made for a legitimate business reason; (b) does not result in an unreasonable delay in payment; (c) is intended to be permanent; and (d) does not have the effect

9

of evading the FLSA's substantive minimum wage or overtime requirements.'" (quoting *Rogers*, 148 F.3d at 57)); *see, e.g.*, *id.* (dismissing late payment claim when only allegation was defendant would delay payments on the holidays); *Mota v. Abalon Exterminating Co.*, No. 22-cv-07602 (MKV), 2024 WL 4202687, at *10 (S.D.N.Y. Sept. 16, 2024) (finding "bald allegations that '[o]n at least some occasions, Plaintiffs and other similarly situated workers did not receive their paychecks on the prescribed paydays, and/or their checks bounced' and [d]efendants 'failed to pay wages or overtime on the regular payment date'" insufficient to state a claim for late wages).  Montero also does not elaborate on this claim in his opposition brief, surreply, or other filings.  *See* Opp.; Surreply; Dkt. 50.

Accordingly, Montero does not state a plausible claim under the FLSA (or the NYLL), and Count III is therefore dismissed.

## III.    ERISA Claims – Count VII

Montero next brings a claim under ERISA in Count VII, alleging that his "termination resulted in the loss of dependent medical coverage, a protected benefit under ERISA."  FAC at 3. Defendants argue that Montero's ERISA claim should be dismissed because government plans are exempted from ERISA.  Br. at 8-9.  The Court agrees.

29 U.S.C. § 1003(b)(1) states that "[t]he provisions of this subchapter shall not apply to any employee benefit plan if . . . such a plan is a governmental plan."  A "'governmental plan' means a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing."  29 U.S.C. § 1002(32).  Thus, any employee benefit plan from Montero's former employer, the City, would not be governed by ERISA.  *See, e.g.*, *Brainbuilders LLC v. EmblemHealth, Inc.*, No. 21-cv-04627 (KPF), 2022 WL 3156179, at *12 (S.D.N.Y. Aug. 8, 2022) ("As a governmental plan, the Plan is exempt from ERISA's regulatory

10

reach."); *Vandermark v. City of New York*, 615 F. Supp. 2d 196, 210 (S.D.N.Y. 2009) (dismissing ERISA claim when the "funds at issue in this case are undoubtedly part of a 'a plan established . . . for its employees . . . by the government of any State or political subdivision thereof.'"), *aff'd*, 391 F. App'x 957 (2d Cir. 2010) (summary order); *Jernigan v. NYCERS*, No. 08-cv-03829 (RR) (MLB), 2010 WL 1049585, at *4 (E.D.N.Y. Mar. 18, 2010) (dismissing ERISA claims when subject plan was a "public employee pension plan covering New York City employees").

As such, Montero's ERISA claim in Count VII is dismissed.

## IV.    HIPAA - Count X

In Count X, Montero claims that Defendants violated HIPAA and the ADA because "[p]rivate medical records were forwarded to unauthorized staff."  FAC at 3.  Insofar as Montero is bringing a claim under HIPAA, Count X is dismissed because HIPAA does not create a private right of action.  *Meadows v. United Servs., Inc.*, 963 F.3d 240, 244 (2d Cir. 2020) (holding that "HIPAA confers no private cause of action, express or implied").  The Court will address the ADA portion of this claim below.

## V.    NYLL § 593(3) – Count XI

In Count XI, Montero alleges that Defendants falsely reported to the NYS DOL, in connection with his application for unemployment benefits, that he was fired for "misconduct," which he alleges constitutes post-termination retaliation and defamation under several federal, state, and city statutes.  FAC at 3-4.  The Court will address the other bases for Montero's claims in Count XI below, but insofar as Montero brings this claim under NYLL § 593(3), he fails to state a claim.  NYLL § 593 governs when an employee may be disqualified for unemployment benefits.  *See* NYLL § 593.  It makes no mention of a private cause of action for retaliation or defamation and thus cannot support a claim for such actions.

To the extent that Montero seeks to challenge the denial of his unemployment benefits, NYLL § 593(6) requires him to "request a hearing of such determination pursuant to [NYLL § 620]."  NYLL § 593(6).  NYLL § 620, in turn, establishes an administrative procedure to challenge the denial of unemployment benefits, including a requirement that the claimant request a hearing with a "referee" "within thirty days after the mailing or personal delivery of notice" of the denial of benefits.  NYLL § 620(1).  If dissatisfied with the outcome of the hearing, the claimant then must appeal to the administrative appeal board.  NYLL § 621(1).  Only when the appeal board makes a final decision may a claimant seek judicial review, which must be made "to the appellate division of the supreme court, third department."  NYLL § 624.  These procedures are "the sole and exclusive procedure notwithstanding any other provision of law." NYLL § 626.  "The federal courts thus play no role in reviewing the decisions of the [NYS] DOL, and this Court cannot hear an appeal from any adverse DOL decision that Plaintiff may have received."  *Sirag v. Dep't of Lab.*, No. 24-cv-02820 (LTS), 2024 WL 2330854, at *2 (S.D.N.Y. May 22, 2024); *see, e.g.*, *Samuels v. N.Y. Dep't of Lab.*, No. 23-cv-08004 (LTS), 2025 WL 27737, at *3 (S.D.N.Y. Jan. 3, 2025) (finding that the court "lack[ed] subject matter jurisdiction to award the unemployment insurance benefits" the plaintiff sought from the NYS DOL); *Paul v. Dep't of Lab.*, No. 25-cv-05049 (NCM) (CHK), 2026 WL 205917, at *2 (E.D.N.Y. Jan. 27, 2026) ("[T]he handling of unemployment insurance benefits claims was committed to the administrative process by the New York Legislature." (quoting *Walker v. Comm'r of NYS Dep't of Lab. & Unemployment*, No. 14-cv-06976, 2015 WL 128028, at *6 (E.D.N.Y. Jan. 8, 2015)).  Accordingly, to the extent that Montero seeks to challenge the denial of unemployment benefits, he cannot do so in this Court.

Thus, Plaintiff's claim under NYLL § 593(3) in Count XI is dismissed.

## VI.    FMLA Claim – Count V

Montero next brings an FMLA interference and retaliation claim in Count V.  In the FAC, Montero alleges that when he "disclosed his wife's serious illness, his supervisor responded, 'put it in prayer,' and failed to inform him of his rights under the FMLA or NY PFL." FAC ¶ 17.  Defendants seek to dismiss the claim because (i) no FMLA interference claim can stand since Montero was not a qualified employee, and (ii) Montero's retaliation claim should be dismissed because he did not engage in a protected activity.  *See* Br. at 16-17.  The Court agrees on both fronts.

"[T]o prevail on a claim of interference with [plaintiffs] FMLA rights, a plaintiff must establish," among other things, "that [h]e is an eligible employee under the FMLA . . . [and] that [h]e was entitled to take leave under the FMLA." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016).  "In order to be eligible for protection under the FMLA, an employee must work 1250 hours in the twelve months prior to the beginning of his or her medical leave." *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 715 (2d Cir. 2001); *accord Arroyo-Horne v. City of New York*, 831 F. App'x 536, 539 (2d Cir. 2020) (summary order). According to the FAC, Montero began working for Defendants on July 29, 2024, FAC ¶ 11, and was terminated on February 25, 2025, *id.* ¶ 18.  Montero even concedes in his opposition brief that he "may not have been FMLA-eligible yet."  Opp. at 5.  Based on the time that Montero pleaded that he was employed, he was not eligible for FMLA leave.  Therefore, he cannot state a claim for interference under the FMLA because his employer allegedly failed to inform him about his rights under the FMLA.

Montero also fails to state a claim for retaliation under the FMLA.  "To establish a prima facie case of FMLA retaliation, a plaintiff must establish that 1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment

13

action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Graziadio*, 817 F.3d at 424 (alterations adopted) (quoting *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 147 (2d Cir. 2012)). It is an open question as to "whether a plaintiff must show actual entitlement to FMLA leave in order to be protected against retaliation for asking for such leave." *Robbins v. Candy Digital Inc.*, No. 23-cv-10619 (LJL), 2024 WL 5056429, at *17 (S.D.N.Y. Dec. 9, 2024) (noting that the "Second Circuit has not decided" whether the FMLA's antiretaliation provision protects individuals that request FMLA leave but are not entitled to such leave). However, the Court need not wade into this arena, because Montero does not allege that he engaged in a protected activity because he does not provide any plausible factual allegations that he requested leave.

In the FAC, Montero only alleges that when he "disclosed his wife's serious illness, his supervisor responded, 'put it in prayer[.]'" FAC ¶ 17; *see also* Opp. at 4. Montero does not plead facts supporting that he requested leave or that he was denied any requested leave; nor does he plead any facts regarding when or how he was retaliated against, or who retaliated against him, for requesting such leave. The FAC contains only a simple conclusory statement that he "was denied leave to care for his ill spouse and was retaliated against following [this] disclosure." FAC at 3. This is not enough to plausibly allege a claim for retaliation. *See, e.g.*, *Suarez v. N.Y. Cnty. Dist. Atty's Off.*, No. 22-cv-10855 (PGG) (OTW), 2025 WL 894516, at *20 (S.D.N.Y. Mar. 24, 2025) (finding that a plaintiff who "did not seek to exercise her rights under the FMLA . . . cannot state a claim for FMLA interference or FMLA retaliation"); *Parkes v. Soho House & Co.*, No. 24-cv-03821 (LTS), 2024 WL 4108793, at *4 (S.D.N.Y. Aug. 26, 2024) (dismissing FMLA claim when "[p]laintiff does not allege that she requested leave under the FMLA and that Defendant either denied or interfered with her right to take FMLA leave, or that Defendant retaliated against her when she sought to take FMLA leave").

14

Accordingly, Montero does not state a claim for retaliation under the FMLA.

## VII.    Fourteenth Amendment Due Process Claims - Counts IV and XI

In Count IV, Montero alleges that he was deprived of due process because he was "terminated without notice, cause, hearing, or opportunity to respond." FAC at 3. In Count XI, Montero alleges that he was denied due process because Defendants falsely reported to the NYS DOL that Montero was discharged for misconduct, which deprived him of his liberty interest in his reputation and good name, otherwise known as a stigma-plus claim. FAC at 3-4. Defendants argue that the claims fail because (1) Montero was an at-will employee, and (2) he fails to provide any facts necessary for a stigma-plus claim. Br. at 9-11. The Court agrees.

"A procedural due process claim requires the plaintiff to establish (1) possession by the plaintiff of a protected liberty or property interest, and (2) deprivation of that interest without constitutionally adequate process." *Tooly v. Schwaller*, 919 F.3d 165, 173 (2d Cir. 2019). "In order to succeed on a claim of deprivation of procedural due process, a plaintiff must establish that state action deprived [him] of a protected property or liberty interest." *Luck v. Mazzone*, 52 F.3d 475, 477 (2d Cir. 1995) (per curiam) (quoting *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1060-61 (2d Cir. 1993)); *accord Nelson v. Thomson*, No. 23-cv-10379 (JPO), 2025 WL 459917, at *4 (S.D.N.Y. Feb. 11, 2025). "Such property interests are 'created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law,'" such as tenure protections for employees. *Luck*, 52 F.3d at 477 (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)); *see also Parrino v. Dep't of Educ.*, No. 24-cv-08892 (AMD) (JRC), 2026 WL 407507, at *8 (E.D.N.Y. Feb. 13, 2026) ("The plaintiff's tenured position constitutes a protected liberty or property interest."). It is well established that "at-will employment is not a constitutionally protected property interest." *Baron v. Port Auth.*, 271 F.3d 81, 89 (2d Cir. 2001); *Gallagher v. New York City Health & Hosps. Corp.*, No. 16-cv-

15

04389 (GBD), 2017 WL 4326042, at *2 (S.D.N.Y. Sept. 20, 2017) ("[I]t is well established in the Second Circuit that 'at-will employment is not a constitutionally protected property interest . . . [t]hus, procedural due process protections are not triggered.'"), *aff'd*, 733 F. App'x 3 (2d Cir. 2018) (summary order).

Here, Montero does not allege that he had any such legal protections, such as tenure, and thus cannot allege a due process claim based on the termination of his employment. *See, e.g.*, *Luck*, 52 F.3d at 477 (finding no procedural due process claim when employee "lacked state civil-service tenure or any other formal employment guarantee that would have given her a cognizable property interest in her job"); *Anderson v. New York*, 614 F. Supp. 2d 404, 426 (S.D.N.Y. 2009) (finding "plaintiff's procedural due process claims fail 'because at-will employment is not a constitutionally protected property interest.'" (citation omitted)), *aff'd sub nom. Anderson v. Cahill*, 417 F. App'x 92 (2d Cir. 2011) (summary order).

In his opposition brief, Montero points to *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) for the proposition that termination of a public employee requires "notice and an opportunity to respond." Opp. at 19. *Loudermill*, however, is distinguishable because the plaintiff in *Loudermill*, unlike Montero, was not an at-will employee. *Loudermill*, 470 U.S. at 538-39. Instead, state law mandated that he could only be fired "for cause." *Id.* at 535. Montero does not allege that he had any such protection established by state law, and even admits in his opposition brief that "he was a probationary employee" who could be fired without cause. *See* Opp. at 18.

With respect to Count XI, Montero also fails to state a stigma-plus claim under the Fourteenth Amendment. Typically, "defamation is an issue of state, not of federal constitutional, law." *Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010). However, "federal constitutional relief is available for defamation committed by government officials . . . when that plaintiff can

16

demonstrate 'a stigmatizing statement plus a deprivation of a tangible interest.'" *Id.* (quoting *Algarin v. Town of Wallkill*, 421 F.3d 137, 138 (2d Cir. 2005)). "To prevail on such a 'stigma-plus' claim, a plaintiff must demonstrate '(1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights.'" *Mudge v. Zugalla*, 939 F.3d 72, 80 (2d Cir. 2019) (quoting *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004)). Under certain circumstances, "government employees" can bring a stigma-plus claim "for defamation in the course of, or in connection with, dismissal from government employment." *Id.* (quoting *Vega*, 596 F.3d at 81). However, "statement[s] that an employee poorly performed her duties or acted in an improper manner," *LaForgia v. Davis*, No. 01-cv-07599 (GBD) (LMS), 2004 WL 2884524, at *8 (S.D.N.Y. Dec. 14, 2004), or that describe behavior or actions that are "within the employee's power to correct," do not generally qualify as stigma for constitutional purposes, *Russell v. Hodges*, 470 F.2d 212, 217 (2d Cir. 1972).

Defendants argue, and the Court agrees, that Montero falls woefully short of identifying a sufficiently stigmatizing statement. Br. at 10-11. Montero's only allegation in support of his stigma-plus claim is that "Defendants falsely reported to the NYS Department of Labor that he was discharged for 'misconduct.'" FAC at 3. Such a conclusory, vague allegation that Montero was fired for misconduct does not plausibly plead a stigma-plus claim under the Fourteenth Amendment. *Adams v. New York State Educ. Dep't*, 752 F. Supp. 2d 420, 449 (S.D.N.Y. 2010) ("A conclusory or nondescript unsatisfactory rating or negative report, by itself, could almost never support a 'stigma plus' allegation."), *aff'd sub nom. Ebewo v. Fairman*, 460 F. App'x 67 (2d Cir. 2012) (summary order).

As such, Montero's Due Process claims in Counts IV and XI are dismissed.

17

## VIII.    Defamation – Count VI

Montero next brings a state law claim for defamation in Count VI because Defendants falsely stated that he was fired for misconduct and that this was untrue and maliciously intended. FAC at 3.  Defendants argue that this claim must be dismissed because it is predicated on statements made to the NYS DOL in connection with unemployment benefits, which are absolutely privileged under New York law.  Br. at 20-21.  The Court agrees.

It is well established under New York law that "statements . . . made to the [NYS] DOL in connection with [an] . . . application for unemployment benefits [are] absolutely privileged." *Phillip v. Sterling Home Care, Inc.*, 959 N.Y.S.2d 546, 547 (N.Y. App. Div. 2013); *see also Davis v. Power of Auth.*, No. 19-cv-00792 (KMK), 2022 WL 309200, at *19 (S.D.N.Y. Feb. 2, 2022) ("[U]nder New York Law, 'communications with the DOL are subject to absolute privilege.'" (citation omitted)), *aff'd sub nom. Davis v. Power Auth.*, No. 22-488, 2023 WL 3064705 (2d Cir. Apr. 25, 2023) (summary order).  Here, Montero alleges that Defendants defamed him when the OLR falsely reported his separation to the NYS DOL as "termination for misconduct." FAC ¶ 19; *id.* at 3.  Accordingly, this statement is privileged and cannot form the basis of a defamation claim.

The cases cited by Montero in opposition to this argument are inapposite.  He first cites to *Albert v. Loksen*, 239 F.3d 256 (2d Cir. 2001) for the proposition that "internal personnel memorandum falsely accusing an employee can be defamatory if published beyond privileged parties." Opp. at 10.  In *Albert*, the Second Circuit examined the qualified privilege afforded to statements between coworkers or supervisors about an employee's performance; it did not address the absolute privilege afforded to statements made to the NYS DOL.  *See Albert*, 239 F.3d at 266.  Montero also cites *Claim of Markowitz*, 464 N.Y.S.2d 262 (N.Y. App. Div. 1983),

18

Opp. at 20, but this case involved an appeal of unemployment benefits and has nothing to do with defamation. *Claim of Markowitz*, 464 N.Y.S.2d at 263-64.

Therefore, Montero's defamation claim at Count VI is dismissed.

**IX.    Federal Discrimination Law Claims - Counts I, II, IX, X, XI**

In Counts I, II, X, and XI, Montero brings claims under the ADA for discrimination, retaliation, and privacy violations. He also brings a Title VII claim for hostile work environment in Count IX. Defendants argue that the Court should dismiss these federal discrimination claims because (1) Title VII and ADA claims are not cognizable against individual defendants, Br. at 11-12; (2) Montero failed to exhaust his administrative remedies, *id.* at 12; and (3) Montero otherwise fails to plead plausible claims under these statutes, *id.* at 12-16. The Court agrees with the first two arguments and need not reach the third.

Montero's claims against the Individual Defendants must be dismissed because claims under Title VII and the ADA are not cognizable against individuals. *See, e.g.*, *Sassaman v. Gamache*, 566 F.3d 307, 315 (2d Cir. 2009) (affirming the district court's "dismissal of the complaint with respect to [the individual defendant] because 'individuals are not subject to liability under Title VII'" (quoting *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004)); *Cagle v. Weill Cornell Med.*, No. 22-cv-06951 (LJL), 2024 WL 3520469, at *1 n.1 (S.D.N.Y. July 24, 2024) ("ADA and Title VII claims cannot be brought against individuals."), *aff'd*, No. 24-2427, 2025 WL 2790408 (2d Cir. Sept. 30, 2025) (summary order); *Alston v. Microsoft Corp.*, No. 08-cv-03547 (DC), 2009 WL 1116360, at *8 n.2 (S.D.N.Y. Apr. 27, 2009) ("The Title VII and ADA claims against the individual defendants are dismissed because 'individuals are not subject to liability under Title VII' or the ADA." (quoting *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000)). Accordingly, Montero's claims under the ADA and Title VII against the Individual Defendants are dismissed.

Montero's ADA and Title VII claims against the City must also be dismissed because he did not exhaust his administrative remedies.  "[A] plaintiff seeking to bring a claim pursuant to the [ADA] [and] Title VII . . . must exhaust administrative remedies through the EEOC."  *Soules v. Connecticut*, 882 F.3d 52, 57 (2d Cir. 2018); *see also Chowdhury v. Dep't of Hous. Pres. & Dev.*, No. 24-cv-00182 (ER), 2025 WL 722811, at *4 (S.D.N.Y. Mar. 6, 2025) ("Under Title VII and the ADA, a plaintiff may bring a suit in federal court only after they filed a claim with the EEOC and received a Notice of a Right to Sue.").  "To exhaust administrative remedies, a plaintiff must timely file a complaint with the EEOC and receive a right-to-sue letter."  *Davis v. Metro N. Commuter R.R.*, No. 21-cv-00387 (ER) (BCM), 2022 WL 2223018, at *8 (S.D.N.Y. June 21, 2022).  "Where a plaintiff fails to provide a right-to-sue letter from the EEOC and does not allege that plaintiff received or attempted to procure such letter, courts have dismissed the Title VII claims."  *Id.*; *see also Jackson v. New York City Transit Auth.*, No. 19-cv-05351 (VSB), 2022 WL 137856, at *6 (S.D.N.Y. Jan. 14, 2022) (dismissing ADA claims for plaintiffs' failure to exhaust administrative remedies); *Staten v. Patrolmen's Benevolent Ass'n of City of New York, Inc.*, 282 F. Supp. 3d 734, 742 (S.D.N.Y. 2017) (dismissing the Title VII claims where the plaintiff did not receive a right-to-sue letter prior to filing the lawsuit), *aff'd*, 736 F. App'x 17 (2d Cir. 2018) (summary order).

Here, Montero does not allege that he followed these requirements.  According to Defendants, Montero filed a complaint with the State Human Rights Department, alleging violations of the State Human Rights law, Title VII, and the ADA.  Dkt. 29-1 at 2.  However, Montero does not allege the outcome of this complaint or if he received a right-to-sue letter.  Montero fails to address this in his opposition brief, claiming only that he filed an "OSHA Complaint."  Opp. at 33.

Accordingly, Montero's claims against the City under the ADA and Title VII are dismissed for failure to exhaust his administrative remedies.[3]

## X.    NYSHRL and NYCHRL - Counts VIII, IX, and XI

Finally, Montero brings claims under the NYSHRL and NYCHRL in Counts VIII, IX, and XI. Having disposed of all the federal law claims in this case, the Court declines to assert supplemental jurisdiction over Montero's remaining state law claims under the NYSHRL and NYCHRL. Section 1367 grants district courts "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Section 1367(c)(3) permits a court to "decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

---

[3] In his opposition brief, Montero seems to suggest he is also bringing claims under NYLL §§ 215, 740, 741, and New York City Administrative Code § 12-113, which protect whistleblowing employees who report unlawful activity. *See* Opp. at 13-14 (NYLL § 741); *id.* at 24-26 (NYLL § 740 and New York City Administrative Code § 12-113); *id.* at 29 (NYLL § 215). These claims are not contained in his FAC, but the Court will address them, assuming that his opposition brief augments his FAC. First, Montero does not state a claim under NYLL § 215 because this statute only protects employees from retaliation for "complain[t]s about a violation of the Labor Law." *See, e.g.*, *Zhang v. Centene Mgmt. Co.*, No. 21-cv-05313 (DG) (CLP), 2023 WL 2969309, at *11 (E.D.N.Y. Feb. 2, 2023) (collecting cases). Montero alleges that he complained about violations of the New York State Education Law, FAC ¶¶ 12-13, and thus is not protected under NYLL § 215. Montero also cannot seek relief under NYLL § 740 because the statute "does not apply to public employers." *Hawkins v. N.Y. State Off. of Mental Health*, No. 17-cv-00649 (NSR), 2019 WL 4520801, at *7 (S.D.N.Y. Sept. 19, 2019), *aff'd*, 845 F. App'x 9 (2d Cir. 2021) (summary order); *accord Brown v. Cnty. of Westchester*, No. 22-cv-06146 (PMH), 2024 WL 21937, at *12 (S.D.N.Y. Jan. 2, 2024). Although NYLL § 741 does apply to public employers, those employers must be healthcare providers, *see* NYLL § 741(1)(b), and Montero admits in his opposition brief that the OLR was not such a provider, Opp. at 13-14. Lastly, New York City Administrative Code § 12-113 protects city employees who report "corruption, criminal activity, conflict of interest, gross mismanagement or abuse of authority by another city officer or employee . . . to the commissioner [of investigation], a council member, the public advocate, the comptroller, or the special commissioner of investigation." NYC Admin § 12-113(b)(1). Montero does not allege that he reported alleged misconduct to anyone in these positions and thus does not state a claim under this law.

Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional "'values of judicial economy, convenience, fairness, and comity' in deciding whether to exercise jurisdiction." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988)); *accord Bongiorno v. Baquet*, No. 20-cv-07288 (LJL), 2021 WL 4311169, at *22 (S.D.N.Y. Sept. 20, 2021). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) (quoting *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003)); *accord Denney v. Deutsche Bank AG*, 443 F.3d 253, 267 (2d Cir. 2006). Thus, the Court will decline to exercise supplemental jurisdiction of Montero's remaining NYCHRL and NYSHRL claims.

The Court may decline to exercise supplemental jurisdiction over Plaintiff's claims under the NYSHRL and NYCHRL even though it exercised jurisdiction over certain other state and city law claims in the FAC. The latter claims addressed by this Court were plainly lacking in merit under well-established state and city law, such that judicial economy would not be served by requiring the Defendants to oppose those claims in a renewed state litigation. *See, e.g.*, *McCaul v. Ardsley Union Free Sch. Dist.*, 514 F. App'x 1, 5-6 (2d Cir. 2013) (summary order) (finding district court did not abuse its discretion in asserting supplemental jurisdiction over "one but not all" of the plaintiff's state law claims when the claims over which the court exercised jurisdiction "did not require the district court to resolve novel or unsettled issues of state law'" (citations omitted)); *Mendez-Nouel v. Gucci Am., Inc.*, No. 10-cv-03388 (PAE), 2012 WL 5451189, at *17 (S.D.N.Y. Nov. 8, 2012) (exercising supplemental jurisdiction over some state

22

claims that were identical to federal law claims but not as to city law claims that would require separate analysis), *aff'd*, 542 F. App'x 12 (2d Cir. 2013) (summary order); *Kashelkar v. Bluestone*, No. 06-cv-08323 (LTS) (THK), 2007 WL 2809874, at *2 (S.D.N.Y. Sept. 26, 2007) ("[I]t is appropriate to exercise supplemental jurisdiction to rule on the merits of Plaintiff's state claims notwithstanding the dismissal of the federal claims, because all of the claims arise from the same set of operative facts and are plainly lacking in merit, and because the interests of justice would not be served by requiring Defendants to oppose those claims in new state court litigation."), *aff'd*, 306 F. App'x 690 (2d Cir. 2009) (summary order).

Accordingly, the Court declines to exercise supplemental jurisdiction over Montero's Counts VIII, IX, and XI, to the extent that they assert claims under the NYSHRL and NYCHRL.

## XI.    Leave to Amend

In his opposition brief, Montero requests leave to amend if the Court dismisses the FAC. Opp. at 3. "While leave to amend a pleading shall be freely granted when justice so requires, amendment is not warranted in the case of, among other things, 'futility.'" *Oneida Indian Nation of New York v. City of Sherrill*, 337 F.3d 139, 168 (2d Cir. 2003) (citation omitted) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)), *rev'd and remanded on different grounds sub nom. City of Sherrill v. Oneida Indian Nation of New York*, 544 U.S. 197 (2005). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) . . . ." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to [Rule] 12(b)(6)." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (citation omitted); *accord Jones-Cruz v. Rivera*, No. 19-cv-06910 (PGG), 2022 WL 20437017, at *7 (S.D.N.Y. Oct. 28, 2022).

23

Here, the majority of Plaintiff's claims were dismissed on legal grounds that cannot be remedied by amendment. *See, e.g.*, *supra* Part IV (HIPAA claim dismissed because HIPAA does not provide a private cause of action); Part III (ERISA claims dismissed because government plans are exempt under ERISA); Part VIII (retaliation and defamation claims dismissed because report to NYS DOL that Plaintiff was fired for misconduct was privileged and nonactionable); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (when the problem in pleadings is "substantive," and "better pleading will not cure it," granting leave to amend would be futile); *Cora v. Lebron*, No. 24-cv-00327 (AMD) (LB), 2024 WL 308244, at *3 (E.D.N.Y. Jan. 26, 2024) (denying leave to amend following a dismissal of a *pro se* litigant complaint because defects identified in the motion to dismiss were substantive). As for claims that were dismissed for failure to plead sufficient facts to state a plausible claim, Montero has not articulated any facts that he would plead that would cure the deficiencies, and the Court has already considered all augmented information contained in his opposition brief and supplemental submissions. Permitting Montero leave to amend under these circumstances would be futile. *Cf. Lacen v. Aygemong*, No. 21-1964, 2022 WL 14177191, at *2 (2d Cir. Oct. 25, 2022) (summary order) (denying leave to amend was not an abuse of discretion when *pro se* plaintiff previously amended and "the new materials he alludes to in his brief to this Court would not overcome his pleading deficiencies"); *Sutton v. U.S. Fed. Gov't*, No. 24-cv-08324 (HG) (LB), 2024 WL 5007420, at *2 (E.D.N.Y. Dec. 6, 2024) ("Notwithstanding Plaintiff's *pro se* status, the Court will not grant him leave to amend since the Complaint lacks any basis in law or fact."). As such, leave to amend is denied.

## CONCLUSION

For the aforementioned reasons, Defendants motion to dismiss is GRANTED. Counts III, IV, V, VI, and VII are dismissed with prejudice. Count X is dismissed with prejudice to the

extent that it seeks relief under HIPAA.  Count XI is dismissed with prejudice to the extent that

the claims seek relief under NYLL § 593(3) and the Fourteenth Amendment.  The remaining

claims are dismissed without prejudice.  The Clerk of the Court is respectfully directed to

terminate the open motions at Dkts. 27, 49, and 50 and close the case.

Dated: March 30, 2026
      New York, New York

                                     SO ORDERED.

                                   *Jennifer Rochon*
                                 JENNIFER L. ROCHON
                                 United States District Judge